UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AKER SOLUTIONS, INC. | CIVIL ACTION |
| VERSUS | NO. 16-2560 |
| SHAMROCK ENERGY SOLUTIONS, LLC; AND SAMURAI INTERNATIONAL PETROLEUM, LLC | SECTION M (4) |

### **ORDER & REASONS**

Before the Court are two post-trial motions. One is a motion by defendants Shamrock Energy Solutions, LLC and Shamrock Management, LLC (collectively, "Shamrock Defendants") brought under Rules 52(b), 59(a)(2), and 59(e) of the Federal Rules of Civil Procedure to amend the findings of fact and for a new trial,[1] to which plaintiff Aker Solutions, Inc. ("Aker") responds in opposition.[2] The other is a motion by Aker for attorney's fees,[3] to which the Shamrock Defendants and defendant Samurai International Petroleum, LLC ("SIPCO") (collectively with the Shamrock Defendants, "Defendants") respond in opposition,[4] and in further support of which Aker replies.[5]

Having considered the parties memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the Shamrock Defendants' motion for new trial, but amending the Findings of Fact and Conclusions of Law to clarify that the Court employed the clear-and-convincing evidentiary standard in analyzing Aker's single-business-enterprise claim, and also to clarify that the attorney's fee award was based on a clause in the contract between

---

[1] R. Doc. 138.
[2] R. Doc. 145.
[3] R. Doc. 137.
[4] R. Doc. 139.
[5] R. Doc. 144.

1

Aker and SIPCO. The Court also grants Aker's motion for attorney's fees, awarding to Aker $474,848.50 in attorney's fees.

I. BACKGROUND[6]

This matter involves unpaid invoices for services rendered where the obligation and the obligor were disputed. Aker filed this suit against the Shamrock Defendants and SIPCO,[7] alleging that SIPCO is obligated by contract to pay Aker $1,780,144.19 for work Aker performed, and SIPCO breached the contract by its failure to pay. Aker alleged that the Shamrock Defendants were jointly and severally liable with SIPCO for SIPCO's debt under the single-business-enterprise theory.

The matter was tried before the Court, sitting without a jury, over two days. After considering the evidence admitted at trial, the arguments of counsel, and the applicable law, the Court issued its Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure. The Court held that Aker and SIPCO had a valid and enforceable contract consisting of a master service contract ("MSC"), work order, and change order under which SIPCO was obligated to pay Aker for performing a feasibility study related to a potential oil-and-gas exploration-and-production ("E&P") opportunity.[8] Aker fully performed all work in a timely manner in accordance with the contract and SIPCO breached the contract by failing to pay Aker's invoices in the total amount of $1,780,144.19.[9] Further, applying the controlling law, the Court held that, under the totality of the circumstances, SIPCO and the Shamrock Defendants

---

[6] A more complete recitation of the facts can be found in this Court's Findings of Fact and Conclusions of Law. R. Doc. 134; *Aker Sols., Inc. v. Shamrock Energy Sols., Inc.*, 2019 WL 4981912 (E.D. La. Oct. 8, 2019).

[7] Jeffrey Trahan, the sole member of each of the Shamrock Defendants and SIPCO, was also named as a defendant. Aker alleged that Trahan was personally liable for SIPCO's debt under the alter-ego theory. The Court held that there was insufficient evidence to apply the alter-ego theory to hold Trahan personally responsible for SIPCO's debt to Aker, and dismissed with prejudice Aker's claim against Trahan. R. Doc. 134 at 39 & 44; *Aker Solutions*, 2019 WL 4981912, at *18 & *21.

[8] R. Doc. 134 at 32-36; *Aker Sols.*, 2019 WL 4981912, at *15-17.

[9] R. Doc. 134 at 36; *Aker Sols.*, 2019 WL 4981912, at *17.

constituted a single-business enterprise because there was overwhelming evidence that the Shamrock Defendants and SIPCO were so intimately affiliated that the legal fiction of their corporate distinctiveness should be disregarded, and they could be treated as a single entity, liable for each other's actions and debts.[10] Thus, the Shamrock Defendants were held to be jointly and solidarily liable with SIPCO for SIPCO's liabilities to Aker.[11] The judgment was entered on October 15, 2019, and these post-trial motions followed.

## II. LAW & ANALYSIS

### A. Shamrock Defendants' Motion for New Trial

Rule 52(b) of the Federal Rules of Civil Procedure provides that, after a bench trial, "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings – or make additional findings – and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). A Rule 52(b) motion "may accompany a motion for a new trial under Rule 59." *Id.* Similarly, Rule 59(a)(2) states that "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Rule 59(e) specifies that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Courts apply the same standard to both Rule 52(b) and Rule 59 motions. *Interstate Fire & Cas. Co. v. Catholic Diocese of El Paso*, 622 F. App'x 418, 420 (5th Cir. 2015).

Motions under Rules 52(b) and 59 call into question the correctness of a judgment. *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). Such rules are "properly invoked to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 581

---

[10] R. Doc. 134 at 39-44; *Aker Sols.*, 2019 WL 4981912, at *19-21.
[11] R. Doc. 134 at 44; *Aker Sols.*, 2019 WL 4981912, at *21.

3

(internal quotation marks and citation omitted). When the motion is not based on newly discovery evidence, the movant "must clearly establish a manifest error of law or fact." *Interstate Fire*, 622 F. App'x at 420 (internal quotation marks and citations omitted). "Manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (internal quotation marks and citations omitted). Consequently, "[a] Rule 59(e) motion should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction." *In re Self*, 172 F. Supp. 2d 813, 816 (W.D. La. 2001). The grant of such a motion is an "extraordinary remedy that should be used sparingly." *Indep. Coca-Cola Emps. Union of Lake Charles, No. 1060 v. Coca–Cola Bottling Co. United, Inc.*, 114 F. App'x 137, 143 (5th Cir. 2004) (citation omitted). A district court has considerable discretion to grant or deny a Rule 59(e) motion. *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir. 1990).

### 1. Single Business Enterprise

The Shamrock Defendants raise four issues in their motion.[12] The first two relate to the Court's findings regarding the applicability of the single-business-enterprise theory.[13] First, the Shamrock Defendants argue that the Court did not specify the burden of proof that it applied in analyzing Aker's single-business-enterprise claim, but must have incorrectly applied a preponderance of the evidence standard because, in their view, when the evidence is examined under a clear-and-convincing standard, "no one could find that SIPCO and Shamrock Management were a single business enterprise."[14] The Shamrock Defendants also argue that the

---

[12] R. Doc. 138-1.
[13] *Id.* at 2-5.
[14] *Id.* at 3.

4

Court did not consider equity in disregarding the corporate separateness of the Shamrock Defendants and SIPCO because Aker knew that those entities were related, but separate, and because Defendants never received Aker's final product.[15]

In opposition, Aker argues that, although the Court did not clearly state that it applied the clear-and-convincing standard, it is evident that it did so because "the Court found that 'at least' fourteen of the eighteen single business enterprise factors were unequivocally satisfied."[16] Further, Aker also argues that the Court considered equity in applying the single-business-enterprise theory to hold the Shamrock Defendants jointly and solidarily liable with SIPCO for its debt to Aker because, when the contract was formed, Aker did not know the true extent of SIPCO's dependence on, and lack of separateness from, the Shamrock Defendants.[17] Further, Aker points out that SIPCO received the benefit of its work though bi-weekly meetings where Aker displayed and discussed its work.[18]

The single-business-enterprise doctrine is "a theory for imposing liability where two or more business entities act as one." *Brown v. ANA Ins. Grp.*, 994 So. 2d 1265, 1266 n.2 (La. 2008) (citing *Green v. Champion Ins. Co.*, 577 So. 2d 249 (La. App. 1991)). Generally, under this doctrine, "[w]hen corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose." *Id.* To determine whether corporations are a single enterprise, Louisiana courts consider the totality of the circumstances in light of eighteen non-exhaustive factors laid out in *Green v. Champion Insurance Co.*[19] *Green*, 577 So. 2d at 257-58; *Coleman v. Burgundy Oaks,*

---

[15] *Id.* at 4-5.
[16] R. Doc. 145 at 3.
[17] *Id.* at 3-5.
[18] *Id.*
[19] The *Green* factors are: identity or substantial identity of ownership; common directors or officers; unified administrative control of corporations whose business functions are similar or supplementary; directors and officers of one corporation act independently in the interest of that corporation; one corporation financing another

5

*L.L.C.*, 71 So. 3d 352, 355 (La. App. 2011). "The party seeking to impose liability based on the single business enterprise theory must show by clear and convincing evidence that the corporations were a single business enterprise." *Alack v. Jaybar, LLC*, 2012 WL 13005346, at *3 (E.D. La. Aug. 21, 2012) (citing *Miller v. Entergy Servs., Inc.*, 913 So. 2d 143, 148 (La. App. 2005)). "Upon finding that a group of corporations constitute a 'single business enterprise,' the court may disregard the concept of corporate separateness to extend liability to each of the affiliated corporations to prevent fraud or to achieve equity." *Green*, 577 So. 2d at 259.

Although the Court did not expressly state that it applied the clear-and-convincing standard or that it applied the single-business-enterprise theory to achieve equity, both concepts are implied in its Findings of Fact and Conclusions of Law. The Court stated that it examined the facts under the totality of the circumstances and "the controlling law and jurisprudence."[20] The Court found that most of the eighteen *Green* factors were satisfied, clearly and convincingly proving SIPCO's co-dependent relationship with the Shamrock Defendants: SIPCO and the Shamrock Defendants shared common ownership, officers, property, employees, offices, and centralized accounting; SIPCO was undercapitalized; unified administrative control existed between the companies and their business functions were similar and supplementary; the Shamrock Defendants paid SIPCO's expenses; and SIPCO lacked any business independent from that provided to it by the Shamrock Defendants.[21] The evidence adduced in support of

---

corporation; inadequate capitalization; one corporation causing the incorporation of another affiliated corporation; one corporation paying the salaries and other expenses or losses of another corporation; receiving no business other than that given to it by its affiliated corporations; one corporation using the property of another corporation as its own; noncompliance with corporate formalities; common employees; services rendered by the employees of one corporation on behalf of another corporation; common offices; centralized accounting; undocumented transfers of funds between corporations; unclear allocation of profits and losses between corporations; and excessive fragmentation of a single enterprise into separate corporations. *Green*, 577 So. 2d at 257-58.

[20] R. Doc. 134 at 44; *Aker Sols.*, 2019 WL 4981912, at *21.
[21] R. Doc. 134 at 41-43; *Aker Sols.*, 2019 WL 4981912, at *20-21.

these facts easily satisfies the clear-and-convincing standard and Aker thus carried its burden of proof.

The Court further finds that equity is served by imposing joint and solidary liability on the Shamrock Defendants because SIPCO acted to aid only them in vetting oil-and-gas E&P opportunities, which they were contractually forbidden to do themselves.[22] Moreover, in its Findings of Fact and Conclusions of Law, the Court explained in detail every way in which SIPCO and the Shamrock Defendants received and benefited from Aker's work. It is simply disingenuous for the Shamrock Defendants to argue that they never received the benefit of Aker's work product.[23]

### 2. Mitigation

Next, the Shamrock Defendants argue that the Court failed to consider mitigation of damages and that Aker's damages should be cut-off as of January 2015 when SIPCO sought bridge financing from Aker, which should have alerted Aker to SIPCO's poor financial condition.[24] Aker argues that it had no reason to stop work in January 2015 because SIPCO repeatedly assured Aker that the invoices would be paid.[25]

As Aker points out, the Court did in fact consider the Shamrock Defendants' mitigation argument and rejected it. Specifically, the Court found that when Aker was helping SIPCO find financing, SPICO's representatives were assuring Aker that the invoices would eventually be paid, and thus, Aker had no reason to believe otherwise or to stop work to mitigate its damages.[26] In this way, the Shamrock Defendants' argument on mitigation is without merit.

---

[22] R. Doc. 134 at 43; *Aker Sols.*, 2019 WL 4981912, at *21.
[23] R. Doc. 134 at 16-24; *Aker Sols.*, 2019 WL 4981912, *8-12.
[24] R. Doc. 138-1 at 5-6.
[25] R. Doc. 145 at 5-6.
[26] R. Doc. 134 at 36 n.134; *Aker Sols.*, 2019 WL 4981912, at *17 n.134.

### 3. Attorney's Fees

Lastly, Defendants argue that Aker waived its claim for attorney's fees by failing to include it in the pretrial order.[27] Aker argues that it did not waive its attorney's fee claim and has asserted it throughout the pendency of the litigation.[28]

Generally, "a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial." *McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996). However, "[t]he decision to bind the parties to the order is viewed as a matter of judicial discretion." 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1527 (3d ed. 2010 & Supp. 2018). In appropriate cases, the trial judge can allow matters outside of the pretrial order to be introduced. *Id.* Indeed, "courts have held that the order should be construed liberally so that it covers any of the possible legal or factual theories that might be embraced by its language." *Id.* Moreover, Rule 16(e) of the Federal Rules of Civil Procedure authorizes a court to modify the pretrial order to "prevent manifest injustice." *Id.*

Here, Aker has not waived its claim for attorney's fees by failing to specifically include any reference to it in the pretrial order. In the pretrial order, Aker identified as a contested issue of law "[w]hether Aker is entitled to pre and post judgment interest and costs as a matter of law."[29] Just one day after the pretrial conference, Aker filed its proposed conclusions of law in which it asked for damages, including "costs, pre- and post-judgment interest and attorney's fees."[30] When the pretrial order is read broadly together with Aker's pretrial filing of its proposed conclusions of law, it is evident that Aker did not waive the claim and that Defendants

---

[27] R. Docs. 138-1 at 6; 139 at 1-2.
[28] R. Docs. 145 at 6-7; 144 at 1-3.
[29] R. Doc. 109 at 22.
[30] R. Doc. 118 at 15.

were on notice of it. *Cf. Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 1997 WL 767685, at *2 (E.D. La. Dec. 10, 1997) (Clement, J.) (claim for front pay was encompassed in pretrial order statement that equitable relief was requested, and plaintiff's mention of front pay in his proposed jury instructions reinforced that it was still an issue).

Moreover, the MSC provides "[i]t is understood and agreed that in the event that either Party hereto institutes suit to enforce any right or obligation against the other arising from or incidental to this Contract, then successful Party shall be entitled to recover reasonable attorney's fees, court costs and other expenses related thereto."[31] Thus, even if Aker's prayer in the pretrial order for "costs" cannot be construed as encompassing attorney's fees (which the Court believes it can given Aker's contemporaneous prayer for same in its proposed conclusions of law), to prevent the manifest injustice that would result from foreclosing Aker's opportunity to pursue its contractual right to recover attorney's fees, the Court hereby modifies the pretrial order to include Aker's claim for attorney's fees.

**B.     Aker's Motion for Attorney's Fees**

Aker now seeks to have the Court fix the amount of attorney's fees it is entitled to recover. In calculating the appropriate fee, "the 'lodestar' calculation is the most useful starting point." *Who Dat Yat Chat, LLC v. Who Dat, Inc.*, 838 F. Supp. 2d 516, 518 (E.D. La. 2012) (trademark case) (quotation omitted). That is, a court must determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The lodestar determination is presumed reasonable, but may be adjusted upward or downward depending on the weight a court allots to the various factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-

---

[31] R. Doc. 1-8 at 9.

19 (5th Cir. 1974).³² As the party requesting fees, Aker bears the burden of establishing the reasonableness of the fees and costs it requests by submitting adequate documentation – namely, time records, affidavits, and the like. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *Who Dat Yat Chat*, 838 F. Supp. 2d at 518. "After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended 'by affidavit or brief with sufficient specificity to give fee applicants notice' of the objections." *Who Dat Yat Chat*, 838 F. Supp. 2d at 519 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

Aker requests $474,848.50 in attorney's fees it has already incurred, plus $50,000 extra to cover the attorney's fees it anticipates incurring in defending the fee motion, opposing the Shamrock Defendants' motion for new trial and appeal, conducting post-trial discovery in its efforts to collect the judgment, and other post-trial efforts.³³ During the course of this litigation, Aker was represented by Bland & Partners, PLLC, and then Gordon Rees Scully Mansukhani

---

³² The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. However, the Supreme Court and Fifth Circuit have stated that several of the *Johnson* factors – namely, the complexity of the issues, the results obtained, the special skill and experience of counsel, and the preclusion of other employment – are fully reflected and subsumed in the lodestar amount. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Shipes v. Trinity Indus.*, 987 F.2d 311, 322 (5th Cir. 1993). Of these factors, "the Fifth Circuit has singled out four of the factors as most important: (1) the time and labor involved; (2) the customary fee; (3) the amount involved and the results obtained; and (4) the experience, reputation, and ability of counsel." *Dinet v. Hydril Co.,* 2006 WL 3904991, at *6 (E.D. La. 2006) (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)).

³³ R. Doc. 137-2 at 11-12. The Court will not award fees for future work or for work that has not yet been documented. To the extent Aker believes it is entitled to an additional award of fees for such work, it may submit an application for same at the appropriate time, which means, at the very least, after such fees have been incurred.

10

("Gordon & Rees") after the firms merged in June 2018.[34] In total, Gordon & Rees attorneys and paralegals logged 1,512.2 hours working on this matter. The total value of these services was $612,137.50, which included $16,143.00 in paralegal fees.[35] In the exercise of billing judgment, Gordon & Rees wrote off $88,860.50 of its fees ($612,137.50 - $88,860.50 = $523,277.00) before invoicing Aker for its services throughout the litigation, and in addition, Aker has reduced its attorney's fees request by another approximately 9-10% from $523,277.00 to $474,848.50.[36]

The lodestar analysis in this case requires a determination of the hours reasonably expended as well as an appropriate hourly rate in the local market. *See McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381-83 (5th Cir. 2011) (applying rates applicable where district court sits rather than rates applicable to attorney's place of work absent certain limited circumstances, such as a showing that out-of-district counsel was necessary to the litigation). According to the affidavits and billing records submitted, Aker seeks to recover for services performed by three attorneys and two paralegals: Davis S. Bland, who charged a rate of $415.00 to $430.00 per hour;[37] Brian J. Comarda, who charged a principal rate of $355.00 to $375.00 per hour;[38] Rachel S. Bland, who charged a rate of $245.00 to $250.00 per hour;[39] and Wendy Riley and Jennifer Justiss, two paralegals at the firm, who charged between $165.00 and $180.00 per hour.[40] Defendants do not challenge the billing rates of Aker's lawyers and paralegals.

---

[34] R. Doc. 137-4 at 2.
[35] *Id.* at 4.
[36] *Id.* at 4-5. Aker elects to forego the recovery of fees incurred by Gordon & Rees attorneys who no longer work at the firm and did not participate in the trial, while nevertheless professing that "their work product was certainly valuable and contributed to the overall success of Aker's lawsuit." R. Doc. 137-2 at 10.
[37] R. Doc. 137-5. Aker did not provide any information regarding the attorney's years of experience.
[38] *Id.* At times, Comarda was billed at an hourly rate of $195.00, but Aker provides no explanation for this.
[39] R. Doc. 76-4.
[40] R. Doc. 76-5.

While an attorney's affidavit alone cannot support a rate's reasonableness, *see Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"), courts in the Fifth Circuit also employ their "'own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value.'" *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 702 n.1 (E.D. La. 2009) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

The Court is convinced that the hourly rates of David Bland, Comarda, Rachel Bland, Riley, and Justiss fall within the range of rates allowed by other courts in this district, albeit on the higher end of that range. *See EnVen Energy Ventures, LLC v. Black Elk Energy Offshore Operations, LLC*, 2015 WL 3505099, at *2-3 (E.D. La. June 3, 2015) (finding hourly rates of $325 for partner/shareholder with 20 years of experience, $300 for associate with 10 years of experience, and $275 for associate with seven years of experience to be reasonable); *Wagner v. Boh Bros. Constr. Co.*, 2012 WL 3637392, at *15 (E.D. La. Aug. 22, 2012) (finding hourly rates of $275 for partner/shareholder with 10 years of experience, and $235 for associate with four years of experience to be reasonable); *Foley v. SAFG Ret. Servs., Inc.*, 2012 WL 956499, at *2 (E.D. La. Mar. 20, 2012) (finding hourly rates of $350 for partner/member with over 30 years of experience, and $275 for associate with over eight years of experience to be reasonable); *Johnson*, 639 F. Supp. 2d at 701-02 (E.D. La. 2009) (finding hourly rates of $300 for partners, $225 for associates, and $75 for paralegals to be within the customary range of rates in the New Orleans area); *Oreck Direct, LLC v. Dyson, Inc.*, 2009 WL 961276, at *6 (E.D. La. Apr. 7, 2009)

("The Court is familiar with the local legal market and notes that the top rate for partner-level attorneys here [*i.e.*, New Orleans] is between $400 and $450 per hour."); *Bd. of Supervisors of La. State Univ. v. Smack Apparel Co.*, 2009 WL 927996, at *4 & *7 (E.D. La. Apr. 2, 2009) (finding that $325 was a reasonable hourly rate for attorney with 10 years of experience in a specialty practice and for attorney with 29 years of unspecialized legal experience). As reflected by the time entries, each attorney and paralegal contributed to the success of Aker's case at the different levels of their experience. Hence, the Court finds that the requested rates of the attorneys and paralegals are reasonable and recoverable.

"The [fee] applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437 (citation omitted). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (citations omitted). A court has discretion to reduce the number of hours awarded, or a percentage from the total, for vague and incomplete documentation insufficient to demonstrate billing judgment. *Id.*; *La. Power & Light Co.*, 50 F.3d at 324.

The Court is satisfied that the time entries in the invoices reflect a sufficient level of detail and description about the number of hours charged and the nature of the services rendered as to permit an evaluation of whether the hours were reasonably expended and the services reasonably rendered. Again, Defendants make no specific challenge to the hours expended or the services rendered, but merely assert with a broad brush that the fees were excessive.[41] This assertion affords the Court no basis to assess the Defendants' concerns about any particular time

---

[41] R. Doc. 139 at 2.

entries. Thus, the Court finds no reason to adjust the amount of time Aker's attorneys wrote for the services they performed, which, given the complexity of the case, the number of documents produced, the discovery undertaken, the filings made, and the length of the trial, the Court finds to be reasonable. Moreover, the Court also finds that Aker's counsel has applied reasonable billing judgment in reducing the total amount of the value of the services sought to be recovered by approximately 22% before seeking recovery of the fees.

In sum, the Court awards Aker the total amount of $474,848.50 in attorney's fees, finding this amount to be reasonable and appropriate, given consideration of the *Johnson* factors.[42]

## III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the Shamrock Defendants' motion for a new trial (R. Doc. 138) is DENIED, but the Findings of Fact and Conclusions of Law (R. Doc. 134) are hereby amended to clarify that the Court employed the clear-and-convincing evidentiary standard in analyzing whether Aker satisfied its burden of proof on its single-business-enterprise claim; that equity is served by imposing joint and several liability against the Shamrock Defendants under the single-business-enterprise theory; and also that Aker did not waive its claim for attorney's fees, which are awarded pursuant to the terms of the parties' contract.

IT IS FURTHER ORDERED that Aker's motion for attorney's fees (R. Doc. 137) is GRANTED, and Aker is awarded attorney's fees in the total amount of $474,848.50.

---

[42] A rough gauge of the reasonableness of this amount is reflected by dividing this sum ($474,848.50) by the hours expended (1,512.2), which yields a blended hourly rate for Aker's attorneys and paralegals of about $314 – a figure well supported by the cases discussing approved rates in the local market.

New Orleans, Louisiana, this 30th day of December, 2019.

                                                _____
                                                BARRY W. ASHE
                                                UNITED STATES DISTRICT JUDGE