## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AKER SOLUTIONS INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO:    16-2560** |
| **SHAMROCK ENERGY SOLUTIONS, LLC, ET AL.** | **SECTION: "M" (4)** |

## ORDER

Before the Court is **Plaintiff's Motion to Fix Attorneys' Fees (R. Doc. 182)** filed by Plaintiff, Aker Solutions, Inc. ("Aker") in the amount of $26,648.00 pursuant to this Court's October 5, 2020 Order (R. Doc. 181). Defendants, Shamrock Management, LLC and Shamrock Energy Solutions, LLC ("Shamrock") filed a limited opposition. R. Doc. 183. Aker filed a reply. R. Doc. 189. Shamrock filed a sur-reply. R. Doc. 193. This motion was set for submission on October 28, 2020 and heard on the briefs.

### I.    Background

Shamrock Management, LLC ("Shamrock Management") performs work for oil and gas companies.[1] In 2008, Jeffrey Trahan purchased Shamrock Management and became its sole member and manager. In 2012, Trahan formed Shamrock Energy Solutions, LLC to serve as a holding company for Shamrock Management and he was the sole member and manager of Shamrock Energy. In 2015, Shamrock Management began doing business as "Shamrock Energy Solutions."

Meanwhile, in 2013, Trahan formed Samurai International Petroleum, LLC ("SIPCO"). As with the Shamrock entities, Trahan was SIPCO's sole member and manager. SIPCO was created to directly engage in oil and gas exploration and production, which Shamrock Management was prohibited from doing. Shamrock Management directly paid SIPCO's debts and was not reimbursed.  Trahan owned all three companies;  they shared the same management; the employees used SIPCO and the Shamrock

---

[1] These facts are taken from the Fifth Circuit Court of Appeal's opinion on this matter. *See* R. Doc. 169.

companies interchangeably; and SIPCO was financially dependent on Shamrock Management.  Aker was retained by SIPCO to conduct a study of the offshore area SIPCO wanted to explore. Aker performed as expected and billed SIPCO roughly $1.7 million for the work but never was paid. A petition to liquidate and dissolve SIPCO was filed in February 2016.

Aker filed the subject claim that the Shamrock entities were liable to it for the work it performed pursuant to Louisiana's "single business enterprise" theory. The lower court found that SIPCO breached its contract and that Shamrock Management was solitarily liable with SIPCO for the breach because the pair constituted a single business enterprise.  Shamrock appealed the  lower court's finding and the appellate court affirmed. Specifically, the appellate court found that there was enough evidence before the district court to support a finding that SIPCO acted and aided only the Shamrock entities in vetting opportunities, which they were contractually forbidden from doing themselves and Shamrock benefited from Aker's work product. Therefore, it was not in error to find the corporations constituted a single business enterprise. Consequently, Shamrock owes Aker $2,650,653.09 plus post-judgment interest accruing daily.[2]

As a result of the judgment, Aker instituted the process of determining how to collect the $2,650,653.09 by sending post-judgment discovery to the Shamrock entities on April 10, 2020.  R. Doc. 170.  The discovery was targeted to identify Shamrock assets, both past and present as well as any transactions with others that may have impacted those assets or finances from September 15, 2014, the date the master services agreement was executed, to the present date.  Preliminarily the Shamrock entities responded to the written discovery, after the discovery responses were originally due on May 11, 2020 and subject to an extension agreement to May 22, 2020.

---

[2] The number contemplates the principal award of $1,780,144.19, plus the Court's award of attorneys' fees (totaling $474,484), court costs (totaling $14,970.43) and pre-judgment interest (totaling $381,043.97 as of August 14, 2020).

On August 14, 2020, Aker filed a Motion to Compel Post-Judgment Discovery (R. Doc. 170) challenging the completeness of those answers. In an order addressing those deficiencies, the Court found that Shamrock had waived its right to objections, Aker's temporal scope was satisfactory, and Shamrock's interrogatory responses must be verified. *See* R. Doc. 181. In addition, the Court found that Aker should be awarded reasonable attorneys fees and costs associated with bringing the motion to compel post-judgment discovery due to Shamrock's gamesmanship and delay. R. Doc. 181, p. 12.

Aker now seeks an award of $28,648.00 in attorney's fees for both addressing Shamrock's bad faith refusal to timely and fully answer its discovery requests as well as preparing and prosecuting its motion to compel post-judgment discovery. R. Doc. 182. Aker contends its attorneys spent over five months dealing with Shamrock's bad faith refusal to engage in the discovery process. R. Doc. 182-1, p. 2. Aker has submitted its contemporaneous billing records and seeks recovery for work done by partners, associates, and its paralegal. *Id.* Aker also contends that Shamrock should also be ordered to pay the award of fees within fourteen (14) days, absent which its sole member, Jeffrey Trahan, should be held personally liable and in contempt of court. R. Doc. 182-1, p. 6.

Shamrock files a limited objection to the extent the motion seeks to hold Jeffrey Trahan personally liable for any attorney fees or expenses and in contempt of court. R. Doc. 183, p. 3. Shamrock also opposes the motion to the extent Aker demands payment of the attorney's fees within fourteen (14) days of the order. *Id.*

## II.    <u>Standard of Review</u>

The Supreme Court has specified that the "lodestar" calculation is the "most useful starting point" for determining the award for attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Lodestar is computed by ". . . the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The lodestar calculation, ". . . provides an objective basis on which to make an initial

estimate of the value of a lawyer's services." *Id.* Once the lodestar has been determined, the district court must consider the weight and applicability of the twelve factors delineated in *Johnson*. *See Watkins v. Forcide*, 7 F.3d 453, 457 (5th Cir. 1993).[3] Subsequently, if the *Johnson* factors warrant an adjustment, the court may make modifications upward or downward to the lodestar. *Id.* However, the lodestar is presumed to be a reasonable calculation and should be modified only in exceptional circumstances. *Id.* (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

The party seeking attorney's fees bears the burden of establishing the reasonableness of the fees by submitting "adequate documentation of the hours reasonably expended" and demonstrating the use of billing judgement. *Creecy v. Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 286 (E.D. La. 2008) (citing *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997)).

## III.   <u>Reasonable Hourly Rate</u>

The "appropriate hourly rate . . . is the market rate in the community for this work." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012)). Moreover, the rate must be calculated "at the 'prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation.'" *Int'l Transp. Workers Fed'n v. Mi-Das Line, SA*, 13–00454, 2013 WL 5329873, at *3 (E.D. La. Sept. 20, 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896 n.11. Finally, if the hourly rate is not opposed, then it is *prima facie* reasonable. *Powell v. C.I.R.*,

---

[3] The twelve *Johnson* factors are (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation and ability of counsel; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).

891 F.2d 1167, 1173 (5th Cir. 1990) (quoting *Islamic Ctr. of Mississippi v. City of Starkville*, 876 F.2d 468, 469 (5th Cir. 1989)).

In this case, the Plaintiff seeks compensation for two attorneys and one paralegal of Gordon Rees Scully Mansukhani, LLP: Brian J. Comarda, partner; Rachel S. Bland, associate attorney; and Jennifer Justiss, paralegal. R. Doc. 182-1. Aker contends Comarda's reasonable hourly rate is $370.00, Bland's reasonable hourly rate is $245.00, and Justiss's reasonable hourly rate is $175.00. Shamrock does not oppose or contest the hourly rates proposed by Aker. As such, the Court finds the rate *prima facie* reasonable. *See Williams v. Res-Care, Inc.*, No. CV 17-10200, 2020 WL 4816141, at *3 (Roby, M.J.) (E.D. La. Aug. 19, 2020).

## IV.  <u>Hours Reasonably Spent on Litigation</u>

Next, the Court must determine what hours of time were reasonably expended on the litigation. The party seeking the fee bears the burden of documenting and supporting the reasonableness of all time-expenditures that compensation is sought. *Hensley*, 461 U.S. at 437. The "[c]ounsel for the prevailing party should make a good faith effort to exclude from fee request hours that are excessive, redundant, and otherwise unnecessary…" *Id.* at 434. Hours that are not properly billed to one's client also are not properly billed to one's adversary. *Id.* The Supreme Court calls on fee applicants to make request that demonstrate "billing judgement". *Id.* The remedy for failing to exercise "billing judgment" is to exclude hours that were not reasonably expended. *See Hensley*, 461 U.S. at 434; *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002) (quoting *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996)) ("If there is no evidence of billing judgment, however, then the proper remedy is not a denial of fees, but a reduction of 'the hours awarded by a percentage intended to substitute for the exercise of billing judgment.'"). Alternatively, this Court can conduct a line-by-line analysis of the time report. *See Green v.*

*Administrators of the Tulane Educational Fund*, 284 F.3d 642, 662 (5th Cir.2002) *overruled on other grounds, Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

### 1.  Administrative Tasks

As an initial matter, the Court notes that "[n]ormally, clerical or secretarial costs are part of an attorney's office overhead and are reflected in the billing rate." *Hagan v. MRS Assocs., Inc.*, 2001 WL 531119, at *9 (E.D. La. May 15, 2001) (Africk, M.J.) (reducing hours billed for time attorney sent faxing documents) (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995)); *In re North*, 59 F.3d 184, 195 (D.C. Cir. 1995); and *Gough v. Apfel*, 133 F.Supp.2d 878 (W.D.Va. 2001)). It is well established that 'when an attorney performs a task that could be handled by clerical staff, the opponent should not be charged the attorney's hourly rate.' " *Kuperman v. ICF Int'l,* No. CV 08-565, 2009 WL 10737138, at *9 (E.D. La. Oct. 13, 2009) (citation omitted) (reducing hours billed for time attorney spent copying and Bates-numbering documents). "Clerical work includes copying, typing, labeling, faxing, mailing, filing and/or delivering pleadings/documents." *Id.* This Court disfavors recovery on simple clerical tasks considered nonchargeable time. *See Rodney v. Elliott Sec. Sols., LLC*, No. CV 19-11890, 2020 WL 4756490, at *10 (Roby, M.J.) (E.D. La. July 30, 2020), *report and recommendation adopted*, No. CV 19-11890, 2020 WL 4747666 (E.D. La. Aug. 17, 2020) (disallowing recovery on summons preparation and correspondence with process server).

In this situation, the Court has observed two entries which it believes to be clerical, and, thus, disallowed. One entry on August 12, 2020, by attorney Rachel Bland for 0.6 hours for "drafting notice of submission for motion to compel." R. Doc. 182-2, p. 13. The second entry is on September 3, 2020, by paralegal Jennifer Justiss described as "[r]ecieve, download and review Shamrock's Opposition to Motion to compel Discovery Responses from Court's document repository and distribute to team for review." R. Doc. 182-2, p. 16.

As such, the Court will reduce Bland's hours from 28.9 to 28.3 and Justiss's hours from 2.3 to 2.2.

### 2.  *Billing Judgment—Excessive and Duplicative Entries and Block Billing*

"The party seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment." *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Id.*

The Court is unable to evaluate whether Aker exercised any billing judgment where it has only received the contemporaneous billing records in redacted form. What the Court can, however, surmise, is that Aker seeks compensation for 88.4 hours of work related to a motion to compel and reply memorandum. *See* R. Doc. 182-2. Upon more careful review, the Court is of the opinion that many entries are excessive and duplicative.

For instance, on September 11, 2020, attorney Rachel Bland spent an excessive 2.2 hours drafting a motion for leave to file an opposition. R. Doc. 182-2, p. 17. The Court notes that when it refers to the motion for leave it is not referring to the reply memorandum, but the one-page four sentence motion that seek permission to file the reply memorandum. *See* R. Doc. 177. The Court is absolutely flabbergasted that it would take over two hours to complete such rudimentary work. This entry is clearly excessive.

Moreover, the Court notes that some entries are duplicative. As example, on September 10, 2020, paralegal Justiss spent 0.5 hours using the Pacer system to file the reply memorandum. R. Doc. 182-2, p. 17. The filing of this motion was not initially successful where the clerk deficiented the document as

it was not accompanied with a motion for leave to reply. *See* R. Doc. 177. As such, the next day, on September 11, 2020, upon refiling the corrected motion, paralegal charges another 0.5 hours for electronically filing a document. R. Doc. 182-2, p. 17. The Court finds these entries duplicative where the attorneys are attempting to charge for unsuccessful work, which would be improperly billed to one's client.

In addition, on September 4, 2020 attorney Comarda billed 2.9 hours for "[f]ollow-up teleconference with Shamrock's new counsel regarding efforts to resolve discovery dispute; preparing for the same; reviewing and analyzing Shamrock's latest discovery responses; reviewing and analyzing Shamrock's opposition to Aker's motion to compel; outlining response and t/c with RSB regarding legal research needed regarding the prescriptive period applicable for revocatory actions." R. Doc. 182-2, p. 16. Four days later, on September 8, 2020, attorney Comarda charged 4.8 hours for the same exact thing—"teleconference with Shamrock's new counsel regarding efforts to resolve discovery dispute; preparing for the same; reviewing and analyzing Shamrock's latest discovery responses; reviewing and analyzing Shamrock's opposition to Aker's motion to compel; outlining response and t/c with RSB regarding legal research needed regarding the prescriptive period applicable for revocatory actions." *Id.* These entries totaling 7.7 hours are both excessive and duplicative.

Finally, the Court notes the fee application submitted by Aker show some entries were "block billed." This term can be defined as the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks. *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 n. 9 (10th Cir. 1998). "This practice can make it impossible for the court to determine the reasonableness of the hours spent on each task." *Canon U.S.A., Inc. v. S.A.M., Inc.*, No. 07-1201, 2009 WL 35334, at *4 (E.D. La. Jan. 6, 2009); *see also Gulf Coast Facilities Management, LLC v. BG LNG Services, LLC*, No. 09-3822, 2010 WL 2773208, at *8-9 (E.D.

La. July 13, 2010). While block billing creates impediments to the analysis of the attorney's fee bill, the Supreme Court has indicated that it is not a basis for refusing to award attorney's fees. *See Hensley*, 461 U.S. at 437, n. 12. "[T]he method most often used to compensate for block billing is a flat reduction of a specific percentage from the award." *Canon*, 2009 WL 35334, at *5 (citing cases).

In this case, the Court found numerous, if not most, entries were block billed. To provide a few examples: on September 9, 2020 attorney Comarda charged 8.6 hours for "[d]rafting Aker's reply brief in support of its motion to compel post-judgment discovery; conference with Shamrock's new counsel regarding potential compromise and resolution; legal research regarding Aker's rights and timing to bring revocatory action; t/c with opposition counsel regarding the possibility of achieving an amicable resolution." R. Doc. 182-2, p. 16. This entry is a prototypical example of block billing where an attorney impermissibly lumps together his total daily work, rather than itemizing his entries by each task.

In this case, the Court finds that many entries are excessive and duplicative and most the entries were block billed.[4] It is clear to the Court that counsel for Akers exercise little to no billing judgment and seeks to receive a disproportionate reward fee. In fact, the Court is concerned about artificial inflation of hours to seek a higher fee award. Beyond the individual billing record entries, the Court highlights the fact that Aker's counsel is attempting to receive 88.4 hours of work connected to a single motion to compel, which memorandum totaled 11.5 pages in length, and reply, which only totaled 7.5 pages in length.

Because the sheer number of entries that were excessive, duplicative, and block-billed, the Court finds that the reduction in costs should be commensurate. In this situation, the Court finds that a reduction of those "block billed" entries by 40% is appropriate. *See, e.g.*, *Verizon Business Global LLC v. Hagan*, No. 07-0415, 2010 WL 5056021, at *5 (E.D. La. Oct. 22, 2010) (citing cases showing that reductions

---

[4] Upon review of Comarda's time entries, the Court has surmised that over seventy percent (70%) were block billed. *See* R. Doc. 182-2.

for block billing between 15% and 35% have been found reasonable), *vacated on other grounds*, 467 F. App'x 312, 2012 WL 1414448 (5th Cir. Apr. 24, 2012). As such, the Court will reduce attorney Comarda's hours from 57.2 to 34.32, attorney Bland's hours from 28.3 hours to 16.98 hours, and paralegal Justiss's hours from 2.2 to 1.32 hours.

## V.     *Lodestar* Calculation

Given the foregoing reasonable rates and hours, the Court calculates the following *Lodestar* amount for the attorney as:

| Attorney | Reasonable Hourly Rate | Reasonable Hours Expended | *Lodestar* Amount |
|---|---|---|---|
| Brian J. Comarda | $370.00 | 34.32 | $12,698.40 |
| Rachel S. Bland | $245.00 | 16.98 | $4,160.10 |
| **Paralegal** | | | |
| Jennifer Justiss | $175.00 | 1.32 | $231.00 |
| | | **Total:** | $17,089.50 |

The total *Lodestar* amount then is **$17,089.50.**

## VI.    Adjusting the *Lodestar*

After the lodestar is determined, the Court may then adjust the lodestar upward or downward depending on the twelve factors set forth in *Johnson*, 488 F.2d at 717-19. However, "the Supreme Court has limited greatly the use of the second, third, eighth, and ninth factors for enhancement purposes, and accordingly, the Fifth Circuit has held that '[e]nhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts.'" *Wells Fargo Equip. Fin., Inc. v. Beaver Const., LLC*, No. CIV. 6:10-0386, 2011 WL 5525999, at *3 (W.D. La. Oct. 18, 2011) (citing *Walker v. U.S. Department of Housing and Urban Development*, 99 F.3d 761, 771–72 (5th Cir. 1996)). Finally, to the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required.

*Migis v. Pearle Vision*, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998). The Court has carefully evaluated the *Johnson* factors and finds an adjustment of the lodestar is warranted.

The Court as an initial matter notes that while this was a standard motion to compel, some additional skill and research was necessary to understand the application of the rules in a post-judgment setting. Considering the *Johnson* factors the Court also highlights factor twelve, which requires the Court to consider the award of fees in similar cases. The Court has run a search and has found no case, which even nears the 88.4, or reduced 52.62 hours, for which Aker counsel's seeks compensation. *See, e.g., Berkley Reg'l Ins. Co. v. Weir Bros.*, No. 3:14-MC-9-B, 2014 WL 2572798, at *4 (N.D. Tex. June 9, 2014) (awarding 4.8 hours, or $1,512.00, in reasonable expenses associated with preparing and submitting Motion to Compel Post–Judgment Discovery to Aid in Enforcement of Judgment); *Branch Banking & Tr. Co. v. Harcharan Singh Narang, M.D., P.A.*, No. 3:17-CV-17-K (BT), 2018 WL 10398477, at *3 (N.D. Tex. Aug. 20, 2018) (awarding 20.4 hours, or $5,691.60, in attorneys fees, as Court believe the 20.4 hours of work performed on the motion for post-judgment discovery was commensurate to attorney's experience); *Regions Equip. Fin. Corp. v. AT 2400 Official No. 530775*, No. 1:10-CV-00215, 2018 WL 4856776, at *3 (E.D. Tex. Sept. 18, 2018), *report and recommendation adopted*, No. 1:10-CV-00215, 2018 WL 4852303 (E.D. Tex. Oct. 4, 2018) (awarding $1,179.90 in attorneys fees for 4.6 hours of work associated with motion to compel post-judgment discovery).

Given the great discrepancy between these case that range from $1,179.90 to $5,691.60 with the $17,089.50 sought in this case, the Court is of the opinion that downward adjustment of the Lodestar is necessary. In this situation, the Court can find no more than $6,000.00 an acceptable award for the motion to compel post-judgment discovery and the reply in this case.

## VII.   **Responsibility**

Finally, the Court considers who is liable for the payment of attorney's fees and costs. Aker contends that Shamrock failed to respond to the discovery in good faith. R. Doc. 182-1. At the conclusion of its motion, Aker states without support that Shamrock's sole member, Jeffrey Trahan, should be held personally liable and in contempt of Court for the attorney's fees awarded in this case. R. Doc. 182-1, p. 6.

Shamrock opposes any imposition of fees against Jeffrey Trahan as he is a non-party and all claims made against him in this case were dismissed by the Court. R. Doc. 183, p. 1. Shamrock contends that the plain language of Rule 37 allows the imposition of attorney's fees only against a party in the case. R. Doc. 183, p. 2. Because Aker failed to successfully pierce the veil, and Trahan was ultimately dismissed from the case, Shamrock contends to levy the fees against Trahan personally would be improper. *Id.*

Aker contends that Shamrock will not pay a penny of the resulting award on this motion and has not paid any amount towards the final judgment in this case. R. Doc. 189, p. 2. Aker further contends that Shamrock is a closely held company and Trahan is the sole member and, as such, he should be held jointly and severally liable for any award of attorney's fees associated with this motion. *Id.* In addition, Aker contends that business entity and officers can be held in contempt for their failure to cause their corporation or company to comply with a legal obligation. *Id.* Aker finally contends that Trahan knew about Aker's discovery requests because he provided a very limited and insufficient response and he was deliberately trying to evade Aker's discovery efforts. R. Doc. 189, p. 5.

Shamrock, in opposition, contends that Aker is attempting to bootstrap a motion for contempt to its motion to fix attorneys fees. R. Doc. 193, p. 1. Shamrock further contends that Aker has failed to establish that Shamrock in anyway violated a previous court order. R. Doc. 193, p. 2. Shamrock

maintains that it has engaged in good faith discovery. R. Doc. 193, p. 3. While it admits the discovery has been slow going in this case, it states this is due to the fact that Shamrock has ceased operations and had to relied on contract personnel to conduct its necessary wind down work. R. Doc. 193, p. 4. Shamrock finally argues any cases cited by Aker are distinguishable to the case before the Court. R. Doc. 193, pp. 5-6.

As an initial matter, the Court finds it necessary to clarify that there has been no finding of bad faith in this matter and no finding that Shamrock or Trahan is in contempt. This is not a sanctions motion, but rather a motion to fix attorneys fees pursuant to filing a successful motion to compel. In its order, the Court agreed with Aker that Shamrock provided late discovery responses, waived its right to make objections to post-judgment discovery requests, needed to provide verification to its responses, and that the temporal scope of the requests seemed appropriate. *See* R. Doc. 181. The Court, therefore awarded attorney's fees to Akers pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) simply because they were a prevailing party on a motion to compel. R. Doc. 181, p. 12. While the Court noted Shamrock's gamesmanship and delay, it made no explicit finding of bad faith and no finding that Shamrock was in contempt. *See id.*

All three cases cited by Aker that support the imposition of fees against a non-party involve a motion for contempt or sanctions. *See Powell v. Collier Constr. LLC K A*, No. CV 03-0707, 2008 WL 11513012, at *3 (W.D. La. Dec. 4, 2008*), report and recommendation adopted sub nom. Powell v. Collier Constr. LLC KA*, No. CV 03-0707, 2009 WL 10733475 (W.D. La. Jan. 27, 2009) (finding any individual may be punished for contempt for failing to cause an entity to comply with a court order); *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 929 (6th Cir. 2020) (affirming case-terminating sanctions in the form of default judgment awarded against all defendants to include the sole shareholder); *Geiger v. Z-Ultimate Self Def. Studios, LLC*, No. 14-CV-00240-REB-BNB, 2014 WL

6065612, at *4 (D. Colo. Nov. 12, 2014) (finding sanctions for spoliation of evidence proper against the alleged offender). This is neither a motion for contempt nor a motion for sanctions, rather this is simply a motion to fix attorneys fees pursuant to Rule 37 of the Federal Rules of Civil Procedure; as such, the Court finds the case law cited by Aker in support of levying the award of attorney's fees against Trahan personally inapplicable to the case at hand.

Rule 37 provides that "[if]f the motion [to compel] is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37 (a)(5)(A). Here, the Court is not convinced that party is Trahan.

In its Finding of Facts and Conclusions of Law, the Court found that, under the totality of the circumstances, piercing the corporate veil to impose liability upon Trahan under the alter ego theory was not warranted because the evidence shows that Trahan did not have exclusive control over SIPCO's contract with Aker. R. Doc. 134, p. 38. The Court even considered the undercapitalization of the company when making such determination. R. Doc. 134, p. 39. Ultimately, the Court decided to dismiss all Aker's claims against Trahan because of this finding. R. Doc. 134, p. 44.

Shamrock has admitted that the delay in producing the full discovery response is its own fault where the wind down of the company has left the corporation with limited resources and personnel. Despite this, Shamrock has made efforts to continue rolling production—hiring a new attorney and contract workers to assist in the wind down process. Aker has provided no information that would lead this Court to believe that Trahan was personally responsible for the failure to deliver discovery responses beyond mere conjecture. The Court, therefore, finds Aker's request that the attorneys fees be imposed jointly and severally against Trahan personally be denied.

## VIII.   <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that the **Plaintiff's Motion to Fix Attorneys' Fees (R. Doc. 182)** is **GRANTED.** Plaintiffs are awarded reasonable attorneys' fees and expenses in the amount of **$6,000.00**.

**IT IS FURTHER ORDERED** that Defendant Shamrock shall satisfy its obligation to Defendants no later than **twenty-one (21) days** from the issuance of this Order.

New Orleans, Louisiana, this 28<u>th</u> day of January 2021.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**